1
2
3
4
5
6
7

8            UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    LEROY CARR,                              No.  2:14-cv-2110 JAM CKD P

12                  Plaintiff,

13         v.                                  FINDINGS AND RECOMMENDATIONS

14    FEDERAL BUREAU OF PRISONS, et al.,

15                  Defendant.

16

17         Plaintiff is a federal prisoner proceeding pro se and in forma pauperis.  This action

18    proceeds on the second amended complaint filed January 26, 2015.  (ECF No. 16 ("SAC").)  The

19    SAC was found to state an Eighth Amendment Bivens[1] claim against defendant Giron and a

20    Federal Tort Claims Act ("FTCA") claim against the United States.[2]  (ECF No. 48.)  Before the

21    court is defendants Giron's and the United States' motion to dismiss these claims.  (ECF No. 55.)

22    Plaintiff has filed an opposition, and defendants have filed a reply.  (ECF Nos. 61 & 62.)

23    ////

24    _____

25    [1] Under Bivens v. Six Unknown Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971),
      individual federal employees may be subject to suit for violating a plaintiff's constitutional rights.

26
      [2] In addition, the district court recently clarified that defendants Olson, Babcock, and Bernabe are
27    still parties to this action, as the May 27, 2016 screening order did not discuss whether the FAC
      stated claims against them, and the earlier order dismissing these defendants was vacated.  (ECF
28    No. 70.)  The findings and recommendations address these defendants, below.

                                          1

1   For the reasons set forth below, the court will recommend that defendants' motion be

2   granted.

3   I. <u>Legal Standards on Motion to Dismiss</u>

4   A. <u>Rule 12(b)(1)</u>

5   A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests the subject

6   matter jurisdiction of the court. <u>Savage v. Glendale Union High Sch.</u>, 343 F.3d 1036, 1039-40

7   (9th Cir. 2003). A Rule 12(b)(1) motion will be granted if the complaint, when considered in its

8   entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction. <u>Id.</u> at

9   1039, n.2; <u>Thornhill Publ'g Co. v. General Tel. & Elecs. Corp.</u>, 594 F.2d 730, 733 (9th Cir.

10  1979). On a motion for lack of jurisdiction under Rule 12(b)(1), no presumptive truthfulness

11  attaches to the plaintiff's allegations, as it does on a motion to dismiss under Rule 12(b)(6) or a

12  motion for summary judgment under Rule 56. <u>Id.</u>

13  Challenges to jurisdiction under Rule 12(b)(1) may be facial (i.e., on the pleadings) or

14  factual, permitting the court to look beyond the complaint. <u>Savage v. Glendale Union High</u>

15  <u>School, Dist. No. 205</u>, 343 F.3d 1036, 1039-40, n.2 (9th Cir. 2003); <u>see also</u> <u>White v. Lee</u>, 227

16  F.3d 1214, 1242 (9th Cir. 2000). In a factual challenge, "the district court is not restricted to the

17  face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve

18  factual disputes concerning the existence of jurisdiction." <u>McCarthy v. Unites States</u>, 850 F.2d

19  558, 560 (9th Cir. 1988). <u>See also</u> <u>Biotics Research Corp. v. Heckler</u>, 710 F.2d 1375, 1379 (9th

20  Cir. 1983) (consideration of material outside the pleadings did not convert a Rule 12(b)(1) motion

21  into one for summary judgment).

22  B. <u>Rule 12(b)(6)</u>

23  In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a

24  complaint must contain more than a "formulaic recitation of the elements of a cause of action"; it

25  must contain factual allegations sufficient to "raise a right to relief above the speculative level."

26  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007). "The pleading must contain something

27  more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable

28  right of action." <u>Id.</u>, quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp.

2

235-236 (3d ed. 2004).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969).  The court will "'presume that general allegations embrace those specific facts that are necessary to support the claim.'"  National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 256 (1994), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972).

Under Rule 12(b)(6), the court may consider facts established by exhibits attached to the complaint.  Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).  The court may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading[.]"  Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by Gailbraith v. County of Santa Clara, 307 F.3d 1119, 1127 (9th Cir. 2002); see also Steckman v. Hart Brewing Co., Inc., 143 F.3d 1293, 1295-96 (9th Cir. 1998) (on Rule 12(b)(6) motion, court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint.") The court may also consider facts which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d 1385, 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other papers filed with the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986).  The court need not accept legal conclusions "cast in the form of factual allegations."  Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

////

1    II.  The Complaint

2           In the SAC, plaintiff alleges that defendant Dr. Giron, who was employed by Federal

3    Correctional Institution in Herlong, California, classified an injury to plaintiff's knee as

4    "Medically Necessary-Non-Emergent" instead of "Medically Necessary-Acute or Emergent." [3]

5    (SAC at 4-5.)  Dr. Giron knew that the "non-emergent" classification would delay plaintiff's knee

6    surgery for months.  (Id. at 5.)  After plaintiff's surgery, Giron was aware that petitioner "was

7    experiencing severe pain but failed to prescribe an effective pain management medication."  (Id.)

8    The medication prescribed to plaintiff was "not strong enough" to control his pain.  (Id.)  Plaintiff

9    alleges that he did not receive any prescribed medication between September 1, 2013 and October

10   1, 2013.  (Id. at 4.)

11          Defendant Dr. Olson was a contracted orthopedic surgeon for the Bureau of Prisons

12   ("BOP").  (Id. at 7.)  Olson allegedly failed to prescribe pain medication to plaintiff during a pre-

13   operation examination, despite knowing that the pain medication plaintiff was using was

14   ineffective.  (Id. at 5.)  Dr. Olson also failed to prescribe physical therapy for plaintiff even

15   though he had "promised [him] that he would prescribe physical therapy on three different

16   occasions," both pre- and post-operation.  (Id. at 5-6.)  Plaintiff alleges that Dr. Olson provided a

17   "substandard level of medical care" by failing to prescribe effective pain medication or physical

18   therapy.  (Id. at 6.)

19          Defendants Babcock and Bernabe "facilitated and maintained an institution which is

20   known for a systemic denial of post-operative care."  (Id. at 6.)  Bernabe supervised "the federal

21   contract in which Dr. Olson received financial interest."  (Id.)  Similarly, Babcock was the

22   "proprietor of the federal contract assigned to Dr. Olson."  (Id. at 7.)  Both defendants were

23   "responsible for maintaining a custom and culture at [FCI-Herlong] that deprived federal inmates

24   ───────────────────

25   [3] In a previous iteration of the complaint, petitioner described his knee injury as a "torn patellar
     tendon."  (ECF No. 14.)  He alleges that the injury occurred on March 10, 2013 and he did not

26   receive surgery until September 25, 2013.  (Id.)  As general rule, however, an amended complaint
     supersedes the original complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967); Local Rule

27   220.  Therefore, in an amended complaint, each claim and the involvement of each defendant
     must be sufficiently alleged.

28

of post-operative medical care." (Id.)  Plaintiff alleges that Babcock and Bernabe conspired with Dr. Olson to deny plaintiff physical therapy in order to save money.  (Id. at 6-8.)

In addition to these defendants, plaintiff sues the United States of America under the FTCA.  He alleges that the BOP was negligent in its policy, which allowed prison doctors to "deviate from national community standards," and also negligent in the treatment of plaintiff's pain and injury.  (Id. at 3-4.)

III.  Procedural History

Plaintiff filed an administrative tort claim with the BOP, which was received on March 10, 2014.  (SAC at 4; ECF No. 55-2, Vickers Decl., ¶ 2.)

When he filed the instant federal action in September 2014, plaintiff was incarcerated at the Federal Correctional Institution in Florence, Colorado.  (ECF No. 55-3, Grow Decl., ¶ 3.) Prison mail records at FCI-Florence indicate that plaintiff mailed his complaint to the court on September 8, 2014.  (See id. & Attachment 1.)  The court received the complaint and docketed it on September 11, 2014.  (ECF No. 1.)

After plaintiff requested leave to supplement the original complaint, he was instead granted leave to amend.  (ECF No. 8.)  Plaintiff filed the First Amended Complaint on December 29, 2014 (ECF No. 14) and the operative SAC on January 26, 2015.  (ECF No. 15.)

Defendant Giron filed a motion to dismiss the complaint on September 4, 2015.  (ECF No. 35.)  On April 11, 2016, the district judge denied Giron's motion without prejudice to renewal and directed the magistrate judge to re-screen the SAC.  (ECF No. 45.)  After the issuance of the second screening order (ECF No. 48), defendants Giron and the United States filed a second motion to dismiss (ECF No. 55), now fully briefed and before the court.

IV. Eighth Amendment Claims

Defendant Giron argues that plaintiff fails to state a cognizable Eighth Amendment claim against him and, alternatively, that any such claim is barred by the doctrine of qualified immunity.

Denial or delay of medical care for a prisoner's serious medical needs may constitute a violation of the prisoner's Eighth and Fourteenth Amendment rights.  Estelle v. Gamble, 429 U.S.

97, 104-05 (1976).  An individual is liable for such a violation only when the individual is deliberately indifferent to a prisoner's serious medical needs.  Id.; see Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002); Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000).

In the Ninth Circuit, the test for deliberate indifference consists of two parts.  Jett, 439 F.3d at 1096, citing McGuckin v. Smith, 974 F.2d 1050 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).  First, the plaintiff must show a "serious medical need" by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'"  Id., citing Estelle, 429 U.S. at 104.  "Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'"  Lopez, 203 F. 3d at 1131-1132, citing McGuckin, 974 F.2d at 1059-60.

Second, the plaintiff must show the defendant's response to the need was deliberately indifferent.  Jett, 439 F.3d at 1096.  This second prong is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference.  Id.  Under this standard, the prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  This "subjective approach" focuses only "on what a defendant's mental attitude actually was."  Id. at 839.  A showing of merely negligent medical care is not enough to establish a constitutional violation.  Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998), citing Estelle, 429 U.S. at 105-106.

A difference of opinion about the proper course of treatment is not deliberate indifference, nor does a dispute between a prisoner and prison officials over the necessity for or extent of medical treatment amount to a constitutional violation.  See, e.g., Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

////

6

Here, plaintiff claims that Dr. Giron violated his Eighth Amendment rights in two ways: by classifying his knee injury as "non-emergent" rather than "acute or emergent," which allegedly delayed his surgery for several months; and by prescribing pain medication that was "not strong enough" after plaintiff's surgery.[4]

As to the "non-emergent" classification, the court takes judicial notice of a BOP Program Statement on Patient Care, dated August 23, 2012.  (ECF No. 56-1, Ex. A.)  This document is referenced in the SAC as plaintiff bases his Eighth Amendment claim on terms defined therein, and thus is a proper subject of judicial notice in a Rule 12(b)(6) motion.

The Patient Care policy states that the BOP "provides five major levels of care that define care provided to inmates."  (Id. at 6.)  These include:

> **a. Medically Necessary – Acute or Emergent.**    Medical conditions that are of an immediate, acute or emergent nature, which without care would cause rapid deteriorations of the inmate's health, significant irreversible loss of function, or may be life-threatening.
>
> Examples of conditions considered acute or emergent include, but are not limited to:
>
> - Myocardial infection
> - Severe trauma such as head injuries
> - Hemorrhage
> - Stroke
> - Status asthmaticus
> - Precipitous labor or complications associated with pregnancy
> - Detached retina, sudden loss of vision
>
> Treatment for conditions in this category is essential to sustain life or function and warrant immediate attention.
>
> **b. Medically Necessary – Non-Emergent.**    Medical conditions that are not immediately life-threatening but which without care the inmate could not be maintained without significant risk of:

---

[4] While plaintiff asserts that he did not receive any of his prescribed pain medication for a month in 2013, he does not tie these allegations to an individual defendant.  (SAC at 4.)

1          • Serious deterioration leading to premature death

2          • Significant reduction in the possibility of repair later without present treatment

3          • Significant pain or discomfort which impairs the inmate's participation in

4             activities of daily living.

5    (Id. at 6-7; emphasis added.)  Examples of conditions considered medically necessary, non-

6    emergent chronic conditions such as diabetes, heart disease, and bipolar disorder; infectious

7    disorders such as HIV and tuberculosis; and cancer.  (Id. at 7.)

8          The Patient Care policy goes on to describe two lower levels of care, including one that

9    covers "reconstruction of the anterior cruciate ligament of the knee," and a fifth level for

10   extraordinary interventions such as organ replacement.  (Id.)

11         In light of these standards, nothing in the SAC suggests that Dr. Giron was deliberately

12   indifferent, or even negligent, in classifying plaintiff's knee injury as "Medically Necessary –

13   Non-Emergent."  Plaintiff's torn tendon was not life-threatening like a head injury or stroke,

14   conditions which would be properly classified "emergent."   Nor does the SAC explain why the

15   (seemingly appropriate) classification of his injury as "Medically Necessary – Non-Emergent"

16   served to delay plaintiff's knee surgery for months, or why the delay constituted deliberate

17   indifference or negligence.  At most, plaintiff has alleged a difference of opinion between himself

18   and his doctor about what medical care was appropriate.  Thus plaintiff fails to state a claim

19   against Giron on this basis.

20         As to plaintiff's claim that Dr. Giron did not prescribe strong enough pain medication

21   after his surgery, the allegations in the SAC are too vague and conclusory to state an Eighth

22   Amendment claim.  Plaintiff does not allege that Giron failed to treat his pain, or any facts that

23   suggest a "deliberately indifferent" frame of mind.  Thus defendants' motion should be granted as

24   to Dr. Giron.

25         Similarly, plaintiff's allegations that Dr. Olson "failed to prescribe an effective pain

26   medication" and "failed to prescribe physical therapy" are too vague and conclusory to state an

27   Eighth Amendment claim.  While the May 27, 2016 screening order inadvertently failed to

28   recommend that this defendant be dismissed (after the March 23, 2015 order dismissing all

8

1  defendants except Giron was vacated), Olson has never been screened in as a defendant to this

2  action, and the SAC fails to state a claim against him.

3        Moreover, plaintiff's conclusory allegations that Babcock and Bernabe maintained a

4  culture of medical negligence and conspired with Dr. Olson to deprive plaintiff of care do not

5  state a federal claim.  While the May 27, 2016 screening order did not recommend dismissal of

6  these defendants, the SAC does not state a cognizable claim against them.  Thus the undersigned

7  will recommend that Olson, Babcock and Bernabe be dismissed with prejudice.

8  V.  FTCA Claim

9        As discussed above, the SAC does not suggest Dr. Giron was negligent in classifying

10  plaintiff's injury as "non-emergent" under the BOP's Patient Care policy.   However, plaintiff

11  also asserts that BOP doctors were negligent in failing to prescribe effective pain medication and

12  post-surgical physical therapy.

13  A.  Legal Standard

14        An action brought under the FTCA is a civil action against the United States "for injury or

15  loss of property, or personal injury or death caused by the negligent or wrongful act or omission

16  of any employee" of the federal government while acting within the scope of his office or

17  employment.  28 U.S.C. § 1346(b).  The FTCA provides for recovery of money damages against

18  the United States for cognizable state or common law torts committed by federal officials while

19  acting within the scope of their employment.  28 U.S.C. §§ 1346(b), 2674.  The FTCA provides

20  that the United States shall be liable in tort suits "in the same manner and to the same extent as a

21  private individual under like circumstances."  28 U.S.C. § 2674.  It is the exclusive waiver of

22  sovereign immunity for suits against the United States sounding in tort.  28 U.S.C. § 1346(b).

23        The FTCA can extend tort liability to the U.S. government if the facts show that the

24  actions taken amount to negligence under California law.  The elements of a negligence claim are

25  duty, breach of duty, proximate cause, and damages.  In a California medical malpractice suit, the

26  plaintiff must show "(1) the duty of the professional to use such skill, prudence, and diligence as

27  other members of his profession commonly possess and exercise; (2) a breach of that duty;(3) a

28  proximate causal connection between the negligent conduct and the resulting injury; and (4)

1    actual loss or damage resulting from the professional's negligence." <u>Hernandez ex rel. Telles-</u>

2    <u>Hernandez v. Sutter Med. Ctr. of Santa Rosa</u>, 2008 WL 2156987, at *9 n. 23 (N.D.2008) (quoting

3    <u>Hanson v. Grode</u>, 76 Cal.App.4th 601, 606 (1999)).

4            Construing the SAC in the light most favorable to plaintiff, the court found it stated an

5    FTCA claim based on alleged medical negligence.  (ECF No. 48.)

6    B.  <u>Applicability of the Mailbox Rule</u>

7            Defendants assert that the court lacks jurisdiction over the FTCA claim, as plaintiff

8    "instituted" this federal action before the close of the requisite six-month waiting period.

9            The FTCA states:

10                   An action shall not be instituted upon a claim against the United
                     States for money damages for [torts] caused by the negligent or
11                   wrongful act or omission of any employee of the Government while
                     acting within the scope of his office or employment, unless the
12                   claimant shall first have presented the claim to the appropriate
                     Federal agency and his claim shall have been finally denied by the
13                   agency in writing and sent by certified or registered mail.  The
                     failure of an agency to make final disposition of a claim within six
14                   months after it is filed shall, at the option of the claimant any time
                     thereafter, be deemed a final denial of the claim for purposes of this
15                   action.

16

17    28 U.S.C. § 2675(a).  Thus, lawsuits alleging tort claims against the United States cannot be

18    commenced until after the plaintiff's administrative claim has been denied or until six months

19    have passed with no agency action on the claim.  These requirements are prerequisites to the

20    FTCA's waiver of sovereign immunity and interpreted strictly.  <u>See</u> <u>Vacek v. U.S. Postal Service</u>,

21    447 F.3d 1248, 1250 (9th Cir. 2006).

22            Here, it is undisputed that the six-month period began with the BOP's receipt of plaintiff's

23    administrative tort claim on March 10, 2014.  <u>See</u> 28 C.F.R. § 14.2(a).  It is also undisputed that

24    the BOP did not act on plaintiff's claim for at least six months.  Thus, in the absence of agency

25    action, plaintiff could initiate an FTCA suit on September 10, 2014, at the earliest.

26            As noted above, plaintiff mailed the original complaint in this action on September 8,

27    2014, and it was docketed three days later.  Defendants contend that the mailbox rule should

28    apply to deem this action "initiated" when plaintiff mailed the complaint on September 8, 2014.

1  Under this interpretation, the complaint would be premature under the FTCA.

2  In <u>Vacek</u>, the Ninth Circuit held that the mailbox rule does not apply to FTCA claims

3  when determining when an agency "received" an administrative tort claim.  447 F.3d at 1252.  In

4  that context, the court strictly construed the jurisdictional requirement that "a claim shall be

5  deemed to have been presented when a Federal agency <u>receives</u> from a claimant . . . written

6  notification of the incident" (emphasis added), such that the date a claimant mailed the

7  notification was irrelevant.  <u>Id.</u> at 1251.  The Ninth Circuit observed that "virtually every circuit

8  to have ruled on the issue has held that the mailbox rule does not apply to [FTCA] claims,

9  regardless of whether it might apply to other federal common law claims."  <u>Id.</u>

10  Nonetheless, defendants argue that precedent and the statutory text require application of

11  the prison mailbox rule[5] to FTCA claims when it comes to determining when a federal action is

12  commenced.  Effectively, defendants assert that the phrase "an action shall not be <u>instituted</u>"

13  should be read to mean "an action shall not be <u>mailed by prisoner</u>" under § 2675(a), as "a primary

14  rationale of the prison mailbox rule [is that] a prisoner loses control over his court filing at the

15  time it is dropped in the prison mail system[.]"  ECF No. 62 at 2, citing <u>Houston</u>, 487 U.S. at 275.

16  First, the premature commencement of a FTCA suit is a jurisdictional defect that cannot

17  be cured by amendment.  <u>See</u> <u>McNeil v. United States</u>, 508 U.S. 106, 113 (1993); <u>Sparrow v. U.</u>

18  <u>S. Postal Service</u>, 825 F. Supp. 252, 254 (E.D. Cal. 1993) ("To permit the premature filing of an

19  FTCA action to be cured by the filing of an amended complaint  . . . would be inconsistent with

20  both <u>McNeil</u> and the rationale behind the jurisdictional prerequisite mandated by the FTCA[.]");

21  <u>see also</u> <u>Yearby v. California Dep't of Corrections</u>, 2010 WL 2880180, *7 (E.D. Cal. July 21,

22  2010) (citing cases that "uniformly hold that a federal tort claim must be both presented and

23  denied before a plaintiff institutes suit by filing his initial complaint, and that an amended

24  complaint will not be construed as 'instituting' an action within the meaning of § 2675.").

25  _____

26  [5] Defendants distinguish the "prison mailbox rule" from the "common law mail box rule"
addressed in <u>Vacek</u>.  Under the former, a prisoner's pro se pleading is "deemed filed when he

27  hands it over to prison authorities for mailing to the relevant court."  <u>Houston v. Lack</u>, 487 U.S.
266, 276 (1988); <u>Huizar v. Carey</u>, 273 F.3d 1220, 1222 (9th Cir. 2001).

28

The question is whether a prisoner action is "initiated" under the FTCA when the prisoner mails the complaint or, alternatively, when the complaint is filed with the court.  In McNeil, the Supreme Court stated:

> In its statutory context, we think the normal interpretation of the word "institute" is synonymous with the words "begin" and "commence."  The most natural reading of the statute indicates that Congress intended to require complete exhaustion of Executive remedies before invocation of the judicial process.

508 U.S. at 111.   In Garvey v. Vaughn, 993 F. 2d 776, 783 (11th Cir. 1993), the Eleventh Circuit held that the prison mailbox rule applied to FTCA claims, such that "the date of filing shall be that of delivery to prison officials of a complaint or other papers destined for the district court for the purpose of ascertaining timeliness."  See also Edwards v. United States, 266 F.3d 756, 758 (7th Cir. 2001) (mailbox rule applies to all prisoner district court filings, absent exceptional circumstances).  "This appears to be the rule in every other circuit to have considered the point," the Edwards court added.  Id. (collecting cases).

The Ninth Circuit cited Garvey and Edwards in extending the Houston mailbox rule to § 1983 suits by inmates.  Douglas v. Noelle, 567 F.3d 1103, 1107 (9th Cir. 2009) (collecting cases).  "The prisoners are unable to control their complaints once they are delivered to prison officials," the court reasoned.  "[They] lack the ability to monitor their mail and to determine whether it has been received by the court."  Id.

Elsewhere, the Ninth Circuit rejected the argument that a prisoner action is "brought" when it is filed in the district court.  Vaden v. Summerhill, 449 F.3d 1047, 1049-51 (9th Cir. 2006.)  Rather, "the word 'brought' properly focuses attention on what the prisoner-plaintiff does."  Id. at 1050.  Thus, the court reasoned, a prisoner action is "brought" under the Prison Litigation Reform Act of 1995 ("PLRA") when the complaint is tendered, not when it is filed.  Id. Because the Vaden plaintiff "did not exhaust his administrative remedies prior to sending his complaint to the district court," his suit was subject to dismissal.  Id. at 1051.

Finally, while the Houston mailbox rule typically applies to the prisoner's advantage, at least one Ninth Circuit district court has applied the rule even when it disadvantages the plaintiff. Drake v. Berg, 2010 WL 309034, **2-3 (N.D. Cal. Jan. 26, 2010) (applying prison mailbox rule

1    and concluding that "because plaintiff mailed his complaint before completing exhaustion, the

2    complaint must be dismissed).  "One of the purposes of the exhaustion requirement is to give the

3    institution a chance to remedy justified inmate grievances without the necessity of court action,"

4    the court wrote.  "This purpose cannot be fulfilled if the prisoner is allowed to mail a complaint to

5    the court before he or she receives the result of the grievance."  Id. at *3, citing Vaden, 449 F.3d

6    1047.

7           In light of the above, the undersigned concludes that the prison mailbox rule applies to

8    determine when plaintiff "instituted" this action under the FTCA.  Because he mailed his

9    complaint before exhausting remedies for his tort claim, the FTCA claim is subject to dismissal

10   under Rule 12(b)(1).

11          Accordingly, IT IS HEREBY RECOMMENDED that:

12          1.  Defendants' motion to dismiss (ECF No. 55) be granted;

13          2.  Defendants Olson, Babcock, and Bernabe be dismissed with prejudice; and

14          3.  The Clerk of Court be directed to close this case.

15          These findings and recommendations are submitted to the United States District Judge

16   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

17   after being served with these findings and recommendations, any party may file written

18   objections with the court and serve a copy on all parties.  Such a document should be captioned

19   "Objections to Magistrate Judge's Findings and Recommendations."  The parties are

20   advised that failure to file objections within the specified time may waive the right to appeal the

21   District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

22   Dated:  February 16, 2017

23                                                        _____
                                                         CAROLYN K. DELANEY
24                                                       UNITED STATES MAGISTRATE JUDGE

25

26

27

28   2 / carr2110.mtd